IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JOHNNIEMAE GREEN and NORMAN GREEN | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | Civil No. 08-597 (JBS/KW) |
| v. | **OPINION** |
| JOHN E. POTTER, POST MASTER GENERAL, et al. | |
| Defendants. | |

APPEARANCES:

Patricia A. Barasch, Esq.
SCHALL & BARASCH, LLC
110 Marter Avenue
Suite 302
Moorestown, NJ 08057
        Attorney for Plaintiff

Ralph J. Marra, Jr.
Acting United States Attorney
        By:  Irene E. Dowdy
                Assistant U.S. Attorney
401 Market Street
Fourth Floor
P.O. Box 2098
Camden, NJ 08101
        Attorney for Defendants

**SIMANDLE**, District Judge:

I.      **INTRODUCTION**

        This matter is before the Court on a partial motion to

dismiss, or, in the alternative, a partial motion for summary

judgment, by Defendants John E. Potter, the Post Master General

for the United States Postal Service, Eastern Area, and Brian

Stewart, Plant Manager of the Philadelphia Logistics and

Distribution Center for the U.S. Postal Service (Eastern Area),

(collectively, "Defendants") against Plaintiff Johnniemae Green ("Plaintiff"), an employee of the United States Postal Service ("USPS") and her husband, Norman Green[1] [Docket Item 21]. Plaintiff has brought suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the Age Discrimination in Employment Act ("ADEA"). Plaintiff alleges that her employer, the USPS, has discriminated against her because she is African-American, female and over forty, and that Defendants retaliated against Plaintiff for her previous complaints to the Equal Employment Opportunity Commission ("EEOC").

Defendants have moved to dismiss only parts of Plaintiffs' present suit. Specifically, they ask the Court to dismiss Mr. Green's claims for loss of consortium, all claims against Stewart and the USPS, all claims under Section 1981, and all claims arising out of a June, 2007 involuntary reassignment of Mrs. Green (Am. Compl. ¶¶ 86-102). They have not sought dismissal or summary judgment on Plaintiffs Title VII and ADEA claims arising out of alleged incidents of discrimination and retaliation between June, 2004 and June, 2006. Plaintiffs have agreed to dismiss Mr. Green as a party plaintiff and Brian Stewart and the USSP as party defendants. Plaintiffs have similarly agreed to dismiss all claims under Section 1981. Thus the sole issue to be decided here is whether Plaintiff is barred from seeking relief

---

[1] As will be discussed, Mr. Green has agreed to dismiss his claims in this action and so the Court will only refer to Mrs. Green as "Plaintiff" for clarity's sake.

2

under Title VII and the ADEA for claims arising out of her June, 2007 job reassignment due to her failing to exhaust her administrative remedies relating to that incident.  The Court, for the reasons discussed below, will grant Defendant's partial motion to dismiss and converted motion for partial summary judgment and prohibit Plaintiff from pursuing claims arising from the June, 2007 reassignment.

## I.    BACKGROUND

### A.  Facts

Plaintiff is an African American female, born on July 16, 1951.  (Am. Compl. ¶ 13.)  Plaintiff was an employee of Defendant USPS at all relevant times.  (Id. ¶ 14.)  Defendant USPS is a federal government service agency organized and existing under the laws of the United States, which operates Logistics and Distribution Centers, including the Philadelphia Logistics and Distribution Center ("Philadelphia L&DC") located at 2279 Center Square Road, Swedesboro, New Jersey.  (Id. ¶ 15.)  Plaintiff worked at the mail processing division for more than twenty-six years.  (Id. ¶¶ 19-20.)  The positions she held at USPS included: Clerk and Supervisor in the Priority Mail Department; SPBS Supervisor; Customer Service Supervisor; Manager, Mail Processing on Tours One and Three and grade level twenty-two at the Wilmington, Delaware facility; Acting General Supervisor for the Philadelphia Processing Center; and Acting Manager, Distribution

Operations ("MDO") for the South Jersey Processing Distribution Center. (Id. ¶¶ 22, 24.) In 2001, Plaintiff became an MDO for the Philadelphia L&DC, which was classified as job grade level twenty-one. (Id. ¶ 23.) Plaintiff alleges that she received excellent performance reviews and met high productivity goals while at both facilities. (Id. ¶ 25.) In June, 2004, Plaintiff had been working as the Tour Three MDO for about one year at the Philadelphia L&DC, working from 4:00 p.m. until 12:30 a.m., and therefore was entitled to "night differential pay." (Id. ¶¶ 26-27)

### 1. First Alleged Incident of Discrimination

In June, 2004, Plant Manager, and Plaintiff's direct supervisor, Brian Stewart, had a level seventeen supervisor summon Plaintiff to his office. (Id. ¶ 28.) According to Plaintiff, Mr. Stewart told her that she was "to have no further dealings with the processing of mail or managing of employees." (Id. ¶ 29.) Plaintiff alleges that he proceeded to tell her that "she would be assigned to a work detail to address the high rate of missorts and to improve service and quality of the facility as the Acting Quality Improvement Manager." (Id. ¶ 30.) Mr. Stewart allegedly gave Plaintiff no justification for the reassignment of Plaintiff's detail and duties, nor did he give Plaintiff the opportunity to accept or decline the detail. (Id. ¶ 32.)

Plaintiff contends that instead of assigning Thomas Bissell, a white, male, level seventeen supervisor, to the position of Quality Manager, which was "expected" to be filled by a level seventeen supervisor, Mr. Stewart assigned Mr. Bissell to the superior detail of Acting Tour One MDO.  (Id. ¶ 35.)  Mr. Stewart then moved a Tour One MDO, Theresa Bonhage, a white female, into Plaintiff's former position of Tour Three MDO.  (Id.)  Moreover, Plaintiff asserts that white and male employees, when put on these temporary assignments, or "details," were typically permitted to continue receiving "night differential pay" if they were entitled to receive it in their permanent position.  (Id. ¶ 37.)  However, Plaintiff states that she did not receive the night differential pay which she received in her prior position. (Id. ¶ 38.)

Plaintiff allegedly contacted Mr. Andrew Keen, Human Resource Manager, to complain of Mr. Stewart's reassignment, to request being moved to another job assignment.  (Id. ¶ 42.) Plaintiff contends that Mr. Keen told her that she would have to speak with Mr. Stewart about moving to another position.  (Id. ¶ 43.)  Plaintiff believes that Mr. Stewart was made aware of this complaint, and that because of the complaint, she was kept on her new detail instead of being reinstated in her prior position. (Id. ¶ 44-45.)

Plaintiff alleges that after she initiated the

administrative complaint, Mr. Stewart claimed that he offered her the Quality Improvement Manager position so that she could take care of her husband in the evenings. (Id. ¶ 39.)  However, Plaintiff maintains that she never requested a schedule change or accommodation, nor did her husband's health require her presence at home during the evenings. (Id. ¶ 40.)

On March 16, 2005, Plaintiff sent Mr. Stewart an e-mail asking if he had considered returning her to her position as MDO on Tour Three, to which he responded that he had not. (Id. ¶¶ 45-46.)  On April 8, 2005, Plaintiff made a second request to be reinstated in her previous position, which Mr. Stewart did not grant; nor did he grant any subsequent verbal requests. (Id. ¶¶ 47-48.)  Plaintiff alleges that Mr. Stewart arranged for Mr. Bissell as well as other MDOs to receive cross-training on other tours, while denying that training to Plaintiff. (Id. ¶¶ 49-50.) Plaintiff additionally alleges that Mr. Stewart, in a conversation with two white male co-workers, stated that Plaintiff looked like a "black gorilla." (Id. ¶ 51.)

Plaintiff alleges that on or about December 22, 2005, Defendant USPS issued a memo indicating that all former Priority Mail Processing Centers would be restructured as Logistics and Distribution Centers. (Id. ¶ 53.)  All Area Operations Vice Presidents were provided with the standard structure for the new Logistics and Distribution Centers. (Id.)  Plaintiff alleges

6

that Mr. Stewart had been informed of the pending restructuring earlier and had moved Plaintiff to the Quality Improvement detail so that he could effectuate his plan to demote Plaintiff and promote a less qualified white male.  (Id. ¶ 54.)

As part of the restructuring and realignment, the MDO grade level twenty-one positions were eliminated.  (Id. ¶ 55.)  Five new positions were created.  (Id. ¶ 56.)  Those positions included: (1) MDO, grade level twenty-two, Tour Three; (2) MDO, level twenty, Tour Three; (3) MDO, level twenty, Tour One; (4) MDO, level nineteen, Tour Two; and (5) Logistics and Distribution Specialist, level nineteen.  (Id.)  All of the employees who were impacted by the realignment were eligible to apply for the vacant positions.  (Id.)  Plaintiff applied for four of the positions.  (Id. ¶ 59.)  Her first choice was MDO, grade level twenty-two, Tour Three; her second choice was MDO, level twenty, Tour Three; her third choice was MDO, level twenty, Tour One; and her fourth choice was MDO, level nineteen, Tour Two.  (Id.)  Seven other candidates applied for the five vacant positions.  (Id.)  Mr. Stewart was named the selecting officer for the positions.  (Id. ¶ 61.)  At that time, Mr. Stewart was not working in the plant, but was detailed to the position of Acting In-Plant Support Manager in the Eastern Area Office located in Pittsburgh, Pennsylvania.  (Id. ¶ 62.)

Mr. Stewart returned to the plant to conduct the interviews

for the newly created positions on June 9, 2006.  (Id. ¶ 63.)
Plaintiff alleges that despite the fact that she had notified
USPS about Mr. Stewart's biased conduct, no other high-level
supervisor participated in the interview process to ensure that
it was fairly administered.  (Id. ¶ 64.)  Plaintiff was selected
for her third choice position, MDO level twenty, Tour One, an
overnight shift with less managerial responsibilities than a Tour
Three position,[2] despite her claim that she was the most
experienced and most qualified candidate.[3]  (Id. ¶¶ 65, 72.)
Additionally, Plaintiff alleges that several of the candidates
who applied, including Thomas Bissell,[4] were not eligible to
apply for the positions because their positions had not been
affected by the restructure.  (Id. ¶ 70.)

  Mr. Stewart, however, selected Mr. Bissell, a white male,

---

[2] Plaintiff states that the Tour Three MDO supervises more
than 300 employees, while the Tour One MDO supervises only about
thirty-two employees who are responsible primarily for clean up
duties.  (Id. ¶ 73.)

[3] Plaintiff alleges that no other candidate had twenty-five
years of service and experience in mail processing and
distribution operations.  (Am. Compl. ¶ 66.)  Plaintiff alleges
that no other candidate had as much management and supervisory
experience.  (Id. ¶ 67.)  Plaintiff alleges that only one other
candidate, Theresa Bonhage, a white female, had attained
Plaintiff's grade level of twenty-one, and even Ms. Bonhage had
significantly less experience than Plaintiff (five years of
service versus Plaintiff's twenty-five years of service).  (Id. ¶
68.)  The other candidates, who were all male, had not attained
managerial positions in their careers with USPS.  (Id. ¶ 69.)

[4] Thomas Bissell was employed as a level seventeen
supervisor at the time.  (Am. Compl. ¶ 70.)

for the top position of Lead MDO, level twenty-two, Tour Three. Mr. Stewart selected Ms. Bonhage, a white female who is younger than Plaintiff, for the MDO, level twenty, Tour Three position. (Id. ¶ 71.)  Mr. Stewart alleges that his selections were based solely on the candidates' performance in the interviews that he conducted on June 9, 2006, in which he asked all candidates the same twenty-five questions.  (Id. ¶ 75.)  However, Plaintiff alleges that Mr. Stewart's reliance on the interviews is merely pretext, because based on his interview notes, the candidates were not placed in their positions in accordance with the level of their performance in answering the questions.  (Id. ¶ 76.)

Plaintiff has alleged that other USPS employees have approached her to express their concern about her demotion.  (Id. ¶ 81.)  Plaintiff also alleges that as a result of Mr. Stewart's discriminatory actions, there is a perception among Plaintiff's co-workers, peers and current supervisors that she was demoted because she was incompetent in performing her duties, whereas Plaintiff maintains she was not deficient in her work.  (Id. ¶ 82.)

Plaintiff's additional requests to be moved from the overnight shift to the Tour Two MDO position and to be detailed to a supervisor position on Tour Two were denied.  (Id. ¶¶ 84-85.)  Plaintiff alleges that as a result of Mr. Stewart's discrimination and retaliation, Plaintiff has suffered physical

injury, embarrassment, emotional distress, mental anguish,
humiliation, loss of self-esteem and financial hardship.  (Id. ¶
86.)

    2.  <u>Second Alleged Incident of Discrimination</u>

    Plaintiff received a letter in or about June 2007, dated
June 11, 2007, signed by James E. Hull, Manager, Distribution
Networks, informing her that she was being involuntarily assigned
from the Philadelphia L&DC in Swedesboro, NJ to the Philadelphia
Air Mail Facility in Philadelphia, PA, effective June 23, 2007.
(Def. Exh. D-4, p. 2; Pl. Compl. Ans. ¶ 86.)  Plaintiff was
informed that she was being reassigned because her daughter,
Sylvia Gaston, who had in May 2006 been assigned to Philadelphia
L&DC as an Associate Supervisor, created a "problematic
arrangement" and "was creating issues involving employees and
union representatives claiming harassment and retaliation
resulting from [the] familiar relationship [with Plaintiff] and
actions as a[n] MDO."  (Id. ¶ 88.)  However, Plaintiff allegedly
had a meeting in or about May 2007, attended by Frank
Pierantozzi, Andrew Keen, Plaintiff and Ms. Gaston, whereby it
was decided that if Plaintiff or Ms. Gaston should be reassigned
or detailed to another facility, it should be Ms. Gaston who is
reassigned or detailed.  (Id. ¶ 89.)  Plaintiff alleges that for
many years, in two separate postal facilities, Plaintiff and Ms.
Gaston had worked together without issue or incident.  (Id. ¶

90.)

Plaintiff requested that she be detailed to the available Tour Two MDO position in the Philadelphia L&DC, which she said would have resulted in no operational or physical contact with Ms. Gaston. (Id. ¶ 91.) This request was denied by Frank Pierantozzi, the acting plant manager after Mr. Stewart left on a detail. (Id. ¶ 92.) Plaintiff requested that she be detailed to an available assignment in the Processing Center in Bellmawr, NJ, which was denied by Mr. Pierantozzi. (Id. ¶ 93.) Plaintiff alleges that her involuntary reassignment resulted in there being no black managers assigned to the Philadelphia L&DC. (Id. ¶ 95.) Following Plaintiff's reassignment, her position at the Philadelphia L&DC was filled by Frank Pierantozzi, a white male who was younger than Plaintiff. (Id. ¶ 96.) This assignment resulted in a promotion for Mr. Pierantozzi. (Id. ¶ 97.) Additionally, Plaintiff alleges that following her reassignment, Len Holmquist, a white male younger and less experienced than Plaintiff, was awarded the Tour Two MDO position that Plaintiff requested instead of being involuntarily reassigned. (Id. ¶ 98.) The assignment resulted in a promotion for Mr. Holmquist. (Id. ¶ 99.) Plaintiff alleges that no other similarly situated male, white, or younger employees were reassigned due to an alleged "disruptive reporting relationship" with a family-member employee. (Id. ¶ 100.)

11

3.   <u>Administrative Remedies</u>[5]

On June 19, 2006, Plaintiff requested an appointment with a Dispute Resolution Specialist.  (Pl. Compl. Exh. A; Defs. Exh. D-1.)  On June 29, 2006, Plaintiff submitted the Information for Pre-Complaint Counseling form, initiating the proceedings for Case 1C-188-0008-06.  (Pl. Compl. Exh. A; Def. Exh. D-1, D-2.)  On August 30, 2006, Plaintiff received notice of her Final Interview with the EEOC Counselor and of her Right to File a Formal Complaint with the EEOC.  (Def. Exh. D-2.)  Plaintiff filed a formal complaint of discrimination on September 13, 2006.  (Def. Exh. D-3.)  Plaintiff's attorney requested that USPS issue a Final Agency Decision on December 22, 2006.  (Pl. Compl. Exh. D.)  On January 26, 2007, the USPS issued their Final Agency

---

[5] In reviewing Plaintiff's attempts to exhaust her administrative remedies for the purposes of Defendants' motion to dismiss, the Court will rely on Plaintiff's exhibits that are attached to the complaint because, "[i]n determining whether a claim should be dismissed under Rule 12(b)(6), a court looks . . . to the facts alleged in the complaint and its attachments . . ." <u>Jordan v. Fox, Rothschild, O'Brien & Frankel</u>, 20 F.3d 1250, 1261 (3d Cir. 1994).

Similarly, the Court will rely on Defendants' exhibits here because a court may also "properly look beyond the complaint to matters of public record including court files, records and letters of official actions or decisions of government agencies and administrative bodies, documents referenced and incorporated in the complaint and documents referenced in the complaint or essential to a plaintiff's claim which are attached to a defendant's motion." <u>Arizmendi v. Lawson</u>, 914 F. Supp. 1157, 1160-61 (E.D. Pa. 1996).  Therefore because these are "undisputedly authentic document[s] that [the] defendant attache[d] as an exhibit to a motion to dismiss" and are referenced in Plaintiff's complaint, we may properly consider them under a 12(b)(6) motion to dismiss.

Decision for Case No. 1C-2888-0008-06, finding no discrimination. (Am. Compl. ¶ 9.)  Plaintiff filed an action in federal court on April 26, 2007.  (Id.)

Plaintiff received notice of the second alleged incident of discrimination -- the involuntary reassignment -- by letter on June 11, 2007.  (Def. Exh. D-4.)  The letter indicated that the transfer of Plaintiff to the Philadelphia Air Mail Facility would go into effect on June 23, 2007.  (Id.)  On June 12, 2007, Plaintiff requested an appointment with a Dispute Resolution Specialist.  (Pl. Compl. Exh. B.)  Plaintiff submitted an Information for Pre-Complaint Counseling form for the second alleged incident of discrimination, Case 1C-188-0011-07, on June 20, 2007.  (Def. Exh. D-4.)  She received a Notice of Right to File a Formal Complaint of Discrimination letter on June 27, 2007.  (Def. Exh. D-5.)  Plaintiff never filed a formal complaint of discrimination associated with this claim.

On September 4, 2007, Plaintiff again submitted an Information for Pre-Complaint Counseling form, and requested an appointment with a Dispute Resolution Specialist, in regards to her reassignment, thus initiating Case No. 1C-191-0045-07.  (Def. Exh. D-6.)  Plaintiff included with her request a copy of her Notification of Personnel Action from USPS (PS Form Fifty), showing an effective date of June 23, 2007 for her reassignment, with a processing date of August 14, 2007.  (Id.)  Plaintiff

13

signed or received her Final Interview from the EEOC Counselor, and Notice of her Right to File a Formal Complaint of Discrimination on October 3, 2007.  (Pl. Compl. Exh. D; Def. Exh. D-7.)  Plaintiff mailed her formal EEOC complaint on October 17, 2007, properly addressing it to the USPS EEO compliance office, but Federal Express accidentally delivered it to an EEOC office in Washington, D.C.  (Def. Exh. D-8.)  Ms. Ana V. Gonzalez, from the EEOC in Washington, D.C., returned the package by mail to Plaintiff's attorney's law office by a letter dated November 16, 2007.  (Id.)  The envelope sent by Ms. Gonzalez was addressed to Plaintiff's attorney's law firm, and the letter inside the envelope included Plaintiff's attorney's name in its salutation. (Def. Exh. D-8.)  Ms. Gonzelez also spoke with Mr. Tucker, an associate at Plaintiff's attorney's law firm, explained the mis-delivery, and faxed the documents to Plaintiff's attorney's law office so that they could "take prompt appropriate action on this matter."  (Def. Exh. D-8.)  Plaintiff's counsel did not return re-mail the documents to the proper address at that time.

On November 21, 2008, during a Status Conference held before Magistrate Judge Joel Schneider, Plaintiff's counsel was made aware of the fact that the proper EEOC office had never received Plaintiff's formal complaint of discrimination.  (Def. Exh. D-8.)  On December 12, 2008, Plaintiff filed her formal EEO complaint of discrimination with the USPS EEO compliance office.  (Pl. Compl.

14

Exh. D.)  In a cover letter, Plaintiff's counsel explained that the original filing had been directed to the wrong address by Federal Express and that counsel did not learn of the error until Defendant's counsel suggested that Plaintiff had waived her claims arising from the June, 2007 transfer.  (Def. Exh. D-8.) Only then did Plaintiff's counsel search her office and discover the November 16, 2007 letter from Ms. Gonzalez.  (Id.)  The EEO complaint was dismissed on December 24, 2008, for being untimely, and for raising an issue previously raised in a prior complaint. (Pl. Compl. Exh. D.)

            4.  <u>Plaintiff's Deposition and Medical Reports</u>

    Plaintiff included in her response brief to Defendant's motion to dismiss a portion of her deposition relating to her mental health, along with other medical records.  This evidence shows that as early as January 25, 2007, Dr. Prabhaker Patel, a psychiatrist, diagnosed Plaintiff with depression.  (Pl. Opp'n Ex. D.)  He also prescribed Ambien, because she could not sleep. (Pl. Opp'n Exh. B, Pl. Dep.)  In her deposition, on November 6, 2008, Plaintiff stated that around the time she received her reassignment in June, 2007, she began seeing Dr. Prabhaker Patel on a regular basis.  (Id.)  Plaintiff had already been seeing Dr. Prahlad Patel (her primary doctor) up to this point.  (Id.) Plaintiff testified that both doctors treated her during June, 2007, the month Plaintiff felt "distraught."  (Id.)  After she

learned of her involuntary reassignment in June, 2007, Plaintiff stated that she "exploded." (Id.)  She testified: "I just couldn't keep myself together any longer." (Id.)  She also testified that she did not report to work from the beginning of June, 2007, until April, 2008. (Id.)  Plaintiff's medical records indicate that she has been prescribed various medications for depression, sleep and anxiety since January 25, 2007. (Pl. Opp'n Exhs. D & E.)

Plaintiff also included a report, dated June 21, 2007, from Dr. Frederick D. Breslin, Ph.D., Plaintiff's consulting clinical psychologist. (Pl. Opp'n Exh. C.)  Dr. Breslin believed that the problems Plaintiff experienced with her supervisors at work "contributed to increasing her feelings of tension and anxiety and created feelings of rejection." (Id.)  Furthermore, "[h]er high blood pressure increased," and "[a]dditional medications were prescribed to help with the anxiety and tension (Lexapro 12.5 and Ambien 12.5), and other various problems." (Id.)  Dr. Breslin reported that while "[t]he Ambien and Lexapro are helping," they affect Plaintiff's "ability to sleep and cause[] her to fall asleep when she is driving." (Id.)  "She has to pull over to the side of the road and pause." (Id.)  Dr. Breslin stated that her problems were "only to become worse without therapy," so he set up a therapy program for Plaintiff. (Id.)

Amy Coleman, a Licensed Professional Counselor, prepared a

16

report on January 15, 2008, in which she found that Plaintiff was suffering from Posttraumatic Stress Disorder ("PTSD") due to Plaintiff's "mistreatment at work."  (Pl. Opp'n Exh. E.) According to Ms. Coleman, Plaintiff's various symptoms as of January, 2008, included "a general feeling of helplessness and fear," nightmares, "diminished interest in participating in activities both in the workplace and in her personal life," "disruption of her sleep pattern, irritability, and difficulty concentrating."  (Id.)  In summarizing the reason for the referral, Ms. Coleman stated that Plaintiff reported "a high level of distress since June 2007" with "high levels of anxiety, sleep disruption, and depression."  (Id.)

**B.  Procedural History**

On April 26, 2007, Plaintiff and her husband brought this action in the United States Court for the Eastern District of Pennsylvania and after Defendants filed an uncontested motion to transfer to the District of New Jersey, on January 30, 2008, the action was transferred to this Court.  Plaintiff sought relief for the allegedly discriminatory and retaliatory treatment of Plaintiff by Defendants, on the basis of her race, age, gender, from June, 2004 through June, 2006 under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq. ("Title VII"), 42 U.S.C. § 1981, and the Age Discrimination in Employment Act, 29 U.S.C. § 633a ("ADEA").  Plaintiff's husband, Mr. Green,

17

sought damages for loss of consortium.  On March 3, 2009, Plaintiff amended her complaint to include allegations related to her June, 2007 involuntary transfer.

On March 6, 2009, Defendants filed the present partial motion to dismiss arguing, inter alia, that Plaintiff's claims arising out of her June, 2007 involuntary transfer should be dismissed for failure to exhaust her administrative remedies. Defendants did not move to dismiss Plaintiff's Title VII and ADEA claims arising out of the alleged discrimination and retaliation that occurred between June, 2004 and June, 2006.  As previously discussed, Plaintiff agreed to dismiss all claims raised by Mr. Green, all claims against Brian Stewart and the USPS, and all claims under Section 1983.  The Court will consequently dismiss those claims in the accompanying Order.  Nevertheless, Plaintiff opposed Defendants' motion to dismiss her Title VII claim arising out of her June, 2007 involuntary transfer and asked the Court to convert Defendants' motion to dismiss to one for partial summary judgment, so that the Court might consider evidence that Plaintiff was entitled to equitable tolling of her obligation to exhaust her administrative remedies.  The Court must now decide whether Plaintiff's claims arising out of her June, 2007 are barred by the requirement of administrative exhaustion.

## III. DISCUSSION

To resolve the pending motion the Court must determine, (1) whether Plaintiff filed the necessary paperwork and exhausted the administrative requirements necessary to file a civil action, and if not, (2) whether Plaintiff's reassignment was encompassed in her earlier EEOC complaint so that additional exhaustion was not required, and (3) whether the Court can equitably toll Plaintiff's untimely submissions so that she may be understood to have properly exhausted the administrative requirements. The Court finds, after careful review of the required administrative procedures, that Plaintiff's claim for retaliation was not encompassed in her earlier EEOC action and that she failed to administratively exhaust her claims arising out of the June, 2007 transfer. Additionally, Plaintiff does not present valid reasons for applying the doctrine of equitable tolling. Therefore, the Court finds that it must grant Defendant's partial motion to dismiss and converted motion for partial summary judgment as to Plaintiff's claims arising from her June, 2007 involuntary transfer for failure to exhaust her administrative remedies.

### A.    Standard of Review for a Motion to Dismiss

In its review of Defendants' partial motion to dismiss, the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of

19

Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (quoting Pinker v.
Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).
Thus, "to survive a motion to dismiss, a complaint must contain
sufficient factual matter, accepted as true, to 'state a claim to
relief that is plausible on its face.'" Ashcroft v. Iqbal, ---
U.S. ---, 129 S. Ct. 1937, 1949 (2009); Fowler v. UPMC Shadyside,
--- F.3d ---, 2009 WL 2501662, at * (3d Cir. Aug. 18, 2009).

   "While a complaint attacked by a Rule 12(b)(6) motion to
dismiss does not need detailed factual allegations, a plaintiff's
obligation to provide the 'grounds' of his 'entitle[ment] to
relief' requires more than labels and conclusions, and a
formulaic recitation of the elements of a cause of action will
not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)
(quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

> Therefore, after Iqbal, when presented with a
> motion to dismiss for failure to state a claim,
> district courts should conduct a two-part analysis.
> First, the factual and legal elements of a claim
> should be separated.   The District Court must
> accept all of the complaint's well-pleaded facts as
> true, but may disregard any legal conclusions.
> [Iqbal, 129 S.Ct. at 1950.]   Second, a District
> Court must then determine whether the facts alleged
> in the complaint are sufficient to show that the
> plaintiff has a "plausible claim for relief." Id.
> [] In other words, a complaint must do more than
> allege the plaintiff's entitlement to relief. A
> complaint has to "show" such an entitlement with
> its facts.  See Phillips, 515 F.3d at 234-35.

Fowler, 2009 WL 2501662, at *4.

   "In deciding motions to dismiss pursuant to Rule 12(b)(6),
courts generally consider only the allegations in the complaint,

exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." Lum v. Bank of America, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (citation omitted).

**B.    Administrative Exhaustion Requirements**

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16, establishes the virtually exclusive remedy for federal employees who allege discrimination in the workplace.[6]  Under Title VII, before an aggrieved party can seek judicial relief, they must fully exhaust the required administrative remedies. Robinson v. Dalton, 107 F.3d 1018, 1020-21 (3d Cir. 1997); see McKart v. United States, 395 U.S. 185, 193 (1969).  Courts require Plaintiffs to exhaust these remedies in order "to promote administrative efficiency, respect executive autonomy by allowing an agency the opportunity to correct its own errors, provide courts with the benefit of an agency's expertise, and serve judicial economy by having the administrative agency compile the factual record."  Robinson, 107 F.3d at 1020 (quoting Heywood v.

---

[6] The exception to pursuing a claim of discrimination in the workplace through Title VII is the Age Discrimination in Employment Act ("ADEA"), which specifically applies to discrimination in the workplace based on age.  While administrative exhaustion is not required under the ADEA, Plaintiff was required to file a notice of intent to file a civil action with the EEOC within 180 days of the alleged discriminatory act.  29 U.S.C. § 633a(d); 29 C.F.R. § 1614.201(a).  Plaintiff did not file such a notice regarding the June, 2007 transfer and does not oppose Plaintiff's motion to dismiss on this ground.  Therefore the Court will dismiss Plaintiff's ADEA claim arising out of the June, 2007 involuntary reassignment.

Cruzan Motors, Inc., 792 F.2d 367, 370 (3d Cir. 1986))(internal quotes ommitted).

To begin the administrative procedures, an aggrieved person must initiate contact with an EEOC Counselor within forty-five days of the date of "the matter alleged to be discriminatory, or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a). Unless the aggrieved person agrees to a longer counseling period, the Counselor must conduct his final interview within thirty days of the employee's initial request for counseling, and inform the employee of the right to file a discrimination complaint. 29 C.F.R. § 1614.105(d). The employee must file their discrimination complaint within fifteen days of receipt of the notice. 29 C.F.R. § 1614.106(b). The agency has 180 days to investigate the EEO Complaint; after which an employee can request either a hearing or an immediate agency decision. 20 C.F.R. §§ 1614.106(e)(2)-1614.110. If the aggrieved employee "fails to timely file her complaint within applicable 45-day period, her discrimination claims are time-barred and will be dismissed." Kim v. Potter, 474 F. Supp. 2d 1175, 1185 (D. Haw. 2007).

### 1.  Whether Plaintiff Exhausted her Administrative Remedies

The Court finds that Plaintiff did not exhaust the necessary administrative procedures as to her allegedly retaliatory June,

22

2007 reassignment in at least two[7] ways: (1) Plaintiff never
filed a formal complaint for Case No. 1C-188-0011-07 (first EEO
complaint challenging Plaintiff's June, 2007 reassignment) and
(2) Plaintiff's contact with an EEO counselor on September 4,
2007, related to Case No. 1C-191-0045-07 (second EEO complaint

---

[7] Defendants argue that Plaintiff's filing of her formal EEO
Complaint of Discrimination on December 12, 2008, for Case No.
1C-191-0045-07 (second EEO complaint challenging Plaintiff's
June, 2007 reassignment), was far beyond the fifteen day period
allowed for filing after receiving the Notice of Right to File a
Formal Complaint letter, and so she failed to exhaust on this
ground as well.  Plaintiff points out that in the Notice of Right
to File Individual Complaint the USPS states:

> Your complaint will be deemed timely filed if it is
> received at this address before the expiration of
> the 15-day filing period, or if it bears a postmark
> that is dated before the expiration of the filing
> period.  In the absence of a legible postmark, it
> must be received by mail within 5 calendar days of
> the expiration date of the filing period.

(Def. Exh. D-8.)  While the Court appreciates Defendants'
argument that in order to be timely filed, an EEO complaint must
eventually be received, the Court similarly appreciates
Plaintiff's position that a complaint will be "deemed timely
filed" so long as it is postmarked within the fifteen day period.
There is no mention of expiration of this protection -- meaning,
there is no specified period of time after which a timely
postmarked EEO complaint, having not yet arrived at the agency,
is no longer timely.  In this case, the complaint did ultimately
arrive at its intended destination, albeit many months after the
fifteen day period had lapsed.  There may well be a necessary
sunset period, and Plaintiff's counsel's evident errors here (by
failing to keep track of the returned package and failure to
monitor the complaint) might impact a determination of whether
the delayed complaint was timely, but because Plaintiff had
already failed to meet the mandatory exhaustion requirements
prior to the failed mailing of her formal EEO complaint arising
out of the June, 2007 reassignment, the Court will not resolve
this issue.

challenging Plaintiff's June, 2007 reassignment), was beyond the
forty-five day period allowed for contact after the alleged
discriminatory actions took place[8] and thus was untimely.
Nevertheless, Plaintiff maintains that she should be permitted to
proceed with this action despite these failings, because she was
not required to file a separate administrative complaint for her
second claim of discrimination, or in the alternative, she should
be entitled to equitable tolling and be understood as having
timely exhausted her administrative remedies.

    2.   <u>Whether Plaintiff's Claim of Retaliation Was
Within the Scope of her Initial Discrimination
Claim of 2006</u>

Plaintiff first argues that she did not need to file a
separate claim of retaliation at all because it was within the
scope of her initial EEOC claim of 2006.  While claims of

---

[8] Plaintiff suggests that the forty-five day period should
be measured from August 14, 2007, the date the Notification of
Personnel Action was processed and perhaps the date Plaintiff
received the formal notice.  (Def. Exh. D-8.)  The Court
disagrees.  Plaintiff learned of the reassignment and its
effective date (June 23, 2007) through a letter dated June 11,
2007.  (Def. Exh. D-4.)  Plaintiff's claims arise not out of the
electronic processing of the formal notification, but the
transfer itself, which became effective June 23, 2007 (as
Plaintiff knew).  In fact, Plaintiff initiated her first EEO
remedy request related to that reassignment within just a few
days of receiving notice of that transfer on June 11th, but
failed to pursue her claim.  (Def. Exh. D-4.)  Under the
governing regulations, Plaintiff was obligated to contact an EEO
counselor within forty-five days of June 23, 2007 ("the effective
date of the [alleged discriminatory employment] action") --
namely, before August 7, 2007 -- and she did not.  29 C.F.R. §
1614.105(a)(1).  Nor did she request additional time as permitted
by 29 C.F.R. § 1614.105(a)(2).

retaliation are sometimes construed to be within the scope of prior EEOC claims, and therefore filing a second claim is unnecessary, the Court does not find that to be the case here.

Plaintiff is correct in her assertion that "the Third Circuit . . . recognizes a modification to the exhaustion requirement." Hill v. United States Gen. Servs. Admin., No. 05-2092, 2008 WL 4371761, at *5 (D.N.J. Sept. 17, 2008)(citing Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984)). This modification excuses a plaintiff from filing a second administrative complaint of discrimination when that complaint "'can reasonably be expected to grow out of the initial charge of discrimination' and the plaintiff can still bring suit on the earlier complaint." Hill, 2008 WL 4371761, at *5 (citing Ostapowicz v. Johnson, 541 F.2d 394, 398-99 (3d Cir. 1976)). The Third Circuit has "permitt[ed] suits based on new acts that occur during the pendency of the case which are fairly within the scope of an EEOC complaint or the investigation growing out of that complaint, without requiring the victim to file additional EEOC complaints . . ." Waiters, 729 F.2d at 237.

This exhaustion exception is narrow, however, and dependent upon the fact that any new acts occurred during the pendency of the EEOC review process. As the appeals court explained, "the parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be

expected to grow out of the charge of discrimination, including new acts which occurred during the pendency of proceedings before the Commission." Ostapowicz, 541 F.2d at 398 (citations omitted); Robinson, 107 F.3d at 1024 ("In Waiters we held that the mere fact that a complainant has pending a complaint of discrimination does not mean that the requirements of administrative exhaustion are necessarily excused.").[9]

Plaintiff's claim of retaliation based on the June 23, 2007 reassignment did not and could not fall within the scope of her 2006 EEOC complaint because the EEOC investigation had already concluded and a final agency decision had been issued on January 26, 2007, almost five months before the allegedly discriminatory and retaliatory involuntary reassignment. (Pl. Am. Compl. C.)

---

[9] The unpublished district court opinions on which Plaintiff relies are not to the contrary. In Gaston v. State Dep't of Law & Pub. Safety, No. 05-3006, 2006 U.S. Dist. LEXIS 17206, at *8-9 (D.N.J. Apr. 5, 2006), the plaintiff's new claims of retaliation arose during and in response to the EEOC investigation. The district court in Kant v. Seton Hall Univ., No. 03-6135, 2008 U.S. Dist. LEXIS 638, at *4-5, 55-56 (D.N.J. Jan. 4, 2008), speaks generally regarding the plaintiff's new claims of retaliation and discrimination, but it is clear from the opinion that many of those alleged acts occurred during the pendency of the EEOC review process and nothing in the opinion suggests authority contrary to the Third Circuit's rulings in Ostapowicz and Robinson. Finally, the opinion in Red v. Potter, No. 03-2241, 2005 U.S. Dist. LEXIS 24125, at *13-14 (D.N.J. Oct. 12, 2005), merely states the standard for the exhaustion exception and observes the importance of notice to the EEOC, providing "a chance, if appropriate, to settle." Here no notice was possible and there was no opportunity to settle Plaintiff's claims regarding her June 23, 2007 reassignment through her 2006 EEOC complaint, because that investigation was completed before the reassignment occurred.

Therefore, the EEOC investigation that could reasonably be expected to grow out of the initial charge of discrimination could not have included the June, 2007 reassignment.  Because the incident that led to Plaintiff's claim of retaliation did not occur during the pendency of the initial EEOC investigation, Plaintiff was obligated to exhaust her administrative remedies as they relate to this separate claim.  See Ostapowicz, 541 F.2d at 398-399.

### B.  Equitable Tolling

Plaintiff next claims that even if she had to file a separate administrative complaint for her Title VII claims arising out of the June 23, 2007 reassignment, and even if her attempts at administrative exhaustion were flawed as untimely and incomplete, she is entitled to equitable tolling of the administrative deadlines due to mental health issues.  It is true that the exhaustion of these administrative procedures is a prudential rather than jurisdictional requirement.  Robinson, 107 F.3d at 1021.  Therefore, "[i]n limited circumstances, courts are permitted to equitably toll administrative filing requirements." Patnaude v. Gonzales, 478 F. Supp. 2d 643, 648 (D. Del. 2007) (quoting Robinson, 107 F.3d at 1018).  The Third Circuit has stated,

> However, merely because exhaustion requirements are prudential does not mean that they are without teeth.  Even prudential exhaustion requirements will be excused in only a narrow set of

circumstances.

Wilson v. MVM, Inc., 475 F.3d 166, 174 (3d Cir. 2007).  It is the plaintiff who bears the burden of proving that she is entitled to equitable tolling, and it is within the court's discretion to determine whether tolling is appropriate.  Patnaude, 438 F. Supp. 2d at 648; Olson v. Federal Mine Safety and Health Review Comm'n, 381 F.3d 1007, 1014 (10th Cir. 1996).  The Third Circuit has described three situations in which equitable tolling may be appropriate: "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or, (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." Oshiver v. Levin, Fishbein, Sedran, & Berman, 38 F.3d 1380, 1387 (3d. Cir. 1994).

The Supreme Court has been generally receptive to the application of equitable tolling "in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass;" however it has "been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights."  Irwin v. Dep't of Veteran Affairs, 498 U.S. 89, 96

(1990) (quoting <u>Baldwin County Welcome Center v. Brown</u>, 466 U.S. 147, 151 (1984)).  Therefore, although the administrative requirements are prudential, usually "[a] complaint does not state a claim upon which relief may be granted unless it asserts the satisfaction of the precondition to suit specified by Title VII: prior submission of the claim . . . for conciliation or resolution."  <u>Hornsby v. United States Postal Service</u>, 787 F.2d 87, 90 (3d Cir. 1986).

### 1.  Conversion to Summary Judgment

Plaintiff argues, and the Court agrees, that Defendant's motion to dismiss should be converted to a motion for summary judgment for purposes of deciding whether Plaintiff's entitled to equitable tolling due to "mental incompetency."  The Court, "[i]n determining whether a claim should be dismissed under Rule 12(b)(6), looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record." <u>Jordan v. Fox, Rothschild, O'Brien & Frankel</u>, 20 F.3d 1250, 1261 (3d Cir. 1994).  If the Court considers evidence outside of the pleadings, it may convert the motion to dismiss into a motion under Rule 56(c), Fed. R. Civ. P.  <u>Butterbaugh v. Chertoff</u>, 479 F. Supp. 2d 485, 490 (W.D. Pa. 2007)(citing <u>In re Rockefeller Ctr. Props. Sec. Litig.</u>, 184 F.3d 280, 297 (3d Cir. 1999)).

Plaintiff presents evidence outside of the pleadings to support Plaintiff's alleged "mental incapacity."  Therefore,

29

"[b]ecause the equitable tolling analysis goes beyond the face of the pleadings, the Court must treat 'the issue of equitable tolling in a manner consistent with Rule 56 for summary judgment.'" Campbell v. Potter, No. 01-CV-4517, 2005 WL 2660380, at *3 (E.D. Pa. Oct. 17, 2005)(quoting Robinson, 207 F.3d at 1022).[10]

The test for deciding a motion for summary judgment is "whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law." Med. Protective Co. v. Watkins, 198 F.3d 100, 103 (3d Cir. 1999). The moving party has "the initial burden of identifying evidence which it believes demonstrates the absence of a genuine issue of material fact." Campbell, 2005 WL 2660380, at *3 (quoting Childers v. Joseph, 842 F.2d 689, 694 (3d Cir. 1988)). If the moving party makes this initial showing, and the nonmoving party has the burden of persuasion, then the nonmoving party must "identify those facts of record which would contradict the facts

---

[10] When the motion to dismiss has been alternatively framed as a motion for summary judgment and the nonmoving party has submitted evidence extraneous to its pleadings, the Court need not provide the parties with express notice of its conversion to summary judgment motion. Rule 56(c), Fed. R. Civ. P. Here, Plaintiff explicitly gave notice that it was seeking to introduce extrinsic evidence and convert the motion to dismiss into a motion for summary judgment. Defendant offered explanation as to why there was no genuine issue of material fact presented by Plaintiff's additional evidence, thereby framing their argument as a motion for summary judgment. Therefore, explicit notice of the conversion of the motion to dismiss to a motion for summary judgment is not necessary.

identified by the movant." Id.  If the nonmoving party fails to meet this burden, then no genuine issue of fact exists and summary judgment is appropriate.  Id.  Here, Plaintiff bears the burden of persuasion to demonstrate that equitable tolling is warranted.  Parker v. Royal Oak Enters., Inc., 85 F. App'x 292, 295 (3d Cir. 2003).

2. Whether Claimant's Failure To Exhaust Administrative Remedies Can Be Equitably Tolled By Reason of Mental Incompetence

Plaintiff argues that she is entitled to equitable tolling due to her mental incompetence.  Plaintiff's opposition does not identify the administrative requirements from which she seeks equitable tolling by reason of mental incompetency.  However, it appears that based on the period of time Plaintiff alleges she was "mentally incompetent," Plaintiff seeks equitable tolling for her failure to file a formal administrative complaint in Case No. 1C-188-0011-07 (first EEO complaint related to the June, 2007 reassignment), and/or her failure to timely contact an EEO counselor in Case No. 1C-191-0045-07 (second EEO complaint related to the June, 2007 reassignment).  The Court finds, however, that no reasonable fact finder could conclude that Plaintiff's mental illness was such that it would entitle her to equitable tolling.

Plaintiff's burden in demonstrating that equitable tolling is warranted is significant, as the doctrine of equitable tolling

must be applied sparingly.  Irwin, 498 U.S. at 95.  Furthermore, in order to allow equitable tolling for reasons of "mental incapacity," "the alleged mental illness must be demonstrated and compelling."  Patnaude, 478 F. Supp. 2d at 648-649; Graham v. Kyler, No. 01-1997, 2002 U.S. Dist. LEXIS 26639, at *8 (E.D. Pa. Oct. 31, 2002) (mental deficiency must actually affect ability to seek remedy); Powell v. Independence Blue Cross, Inc., No. 95-2509, 1997 WL 137198 (E.D. Pa. Mar. 26, 1997)(mental illness must prevent plaintiff from managing her affairs and understanding and acting on her rights).

Plaintiff is faced with several challenges when raising her tolling argument.  First, Plaintiff cannot request tolling for her first EEO complaint related to the June, 2007 reassignment.  To date Plaintiff has not filed a formal complaint in that matter, nor has she argued that any mental difficulties she faced in June, 2007 justify tolling until the present date (such an argument being impossible in light of her evident ability to pursue her claim in September, 2007, when she initiated her second request for an administrative remedy for the June, 2007 reassignment).  Plaintiff having passed whatever deadline might have been appropriate with tolling and still not filed a formal complaint, equitable tolling cannot correct the deficiencies of her first attempt at an administrative remedy for the June, 2007 reassignment.

Second, in order to justify tolling the forty-five day period to contact a counselor for her second EEO complaint related to the June, 2007 reassignment, Plaintiff is required not only to present evidence of mental difficulties, but to focus her evidence on the period between June 20, 2007 (when she submitted a detailed Information for Pre-Complaint Counseling form), (Def. Exh. D-4), and September 4, 2007 (when she contacted USPS's EEOC office), (Def. Exh. D-6).  In short, Plaintiff was able to pursue an administrative remedy as of June 20, 2007 and then again on September 4, 2007.  The question becomes whether there is evidence showing that during the specific period between those two dates Plaintiff suffered from any increased mental difficulties making her unable to contact an EEO counselor.

Plaintiff has presented virtually no evidence to suggest that her mental illness prevented her from managing her affairs and understanding and acting on her rights at any point.  While Plaintiff's medical records show that she was diagnosed for "deep depression and severe anxiety," for which she received medication and counseling, they do not indicate that Plaintiff could not understand or act upon her rights.  On January 25, 2007, months before Plaintiff was able to initiate her first EEOC remedy request related to the reassignment, Dr. Prabhaker Patel diagnosed her with depression.  (Pl. Opp'n Ex. C.)  Plaintiff stated in her deposition that she was "distraught . . . around

33

June of 2007" and that she "tried to keep [her]self together until [she] just exploded." (Pl. Opp'n Exh. B.) After her involuntary reassignment she "couldn't keep [her]self together any longer." (Id.) On June 21, 2007, Frederick D. Breslin, Ph.D., a consulting clinical psychologist, reported that the alleged incidents of discrimination "contributed to increasing her feelings of tension and anxiety and created feelings of rejection." (Pl. Opp'n Exh. C.) Additionally, Dr. Breslin stated that Plaintiff's "high blood pressure increased, and she was placed on two separate medicines to deal with her problems." (Id.) Yet the day before Dr. Breslin prepared his report, and soon after the allegedly traumatic notice of reassignment, Plaintiff was able to prepare her first Information for Pre-Complaint Counseling form related to the June reassignment. (Def. Exh. D-4.) According to Amy Coleman, Plaintiff remained in a state of high distress from June, 2007 until at least January, 2008, when Ms. Coleman diagnosed Plaintiff with PTSD, and did not report to work from June, 2007 until April, 2008, (Pl. Opp'n Exh. 5.), but Plaintiff was able to find counsel and pursue her second administrative complaint regarding the reassignment during this time.

Taking Plaintiff's evidence in the light most favorable to Plaintiff, and assuming all her evidence to be true, it appears that Plaintiff has suffered from some form of mental illness

since January, 2007, that her condition worsened in June, 2007 after she learned about her involuntary reassignment, that she continued to suffer a high level of distress at least until at least January, 2008, when she was diagnosed with PTSD which caused, among other things, difficulty concentrating. Nevertheless, during this period she was able to contact an EEO counselor twice (once on June 12, 2007 and once on September 4, 2007), complete two lengthy Information for Pre-Complaint Counseling (one on June 20, 2007 and one on September 6, 2007), and obtain a lawyer (at some point before September 6, 2007). None of the evidence suggests, and no reasonable fact finder could find, that after June 20, 2007 Plaintiff rapidly worsened and before September 6, 2007 Plaintiff rapidly improved so that between these two points her mental illness "in fact prevented [her] from managing [her] affairs and thus from understanding [her] legal rights and acting upon them." See Graham, 2002 U.S. Dist. LEXIS 26639, at *8; Smith-Haynie v. District of Columbia, 155 F.3d 575, 580 (D.C. Cir. 1998)(equitable tolling not appropriate even though plaintiff did not understand EEOC right to sue letter, was traumatized and unable to go to work and face alleged harasser).  Because Plaintiff did not demonstrate that her illness in fact prevented her from managing her affairs and understanding and acting on her legal rights between June 20, 2007 and September 4, 2007, she is not entitled to equitable

tolling of the forty-five day period in which she had to contact an EEO counsel.

Finally, even if Plaintiff could meet the requirements of equitable tolling for her second attempt at seeking an administrative remedy for the June, 2007 involuntary transfer, that attempt was already fatally flawed because she had already filed a virtually identical EEO complaint arising out of the same reassignment against the same allegedly bad actors (Frank Pierantozzi and Andrew Keen).  Under 29 C.F.R. § 1614.107(a)(1), the USPS EEO office was required to dismiss that complaint as duplicative.  The relevant regulation reads: "Prior to a request for a hearing in a case, the agency shall dismiss an entire complaint . . .[that] states the same claim that is pending before or has been decided by the agency or Commission."  29 C.F.R. § 1614.107(a)(1).  Plaintiff does not dispute that her successive claims arising out of the June, 2007 reassignment were the same and so her second attempt to administratively exhaust that claim was fatally flawed from the start.

**IV. CONCLUSION**

For the reasons discussed above, the Court will grant the Defendant's partial motion to dismiss and converted motion for summary judgment.  The Court will dismiss all claims raised by Mr. Green, all claims against USPS and Brian Steward, and all claims under 42 U.S.C. § 1981.  The Court will further dismiss

36

all claims arising out of Plaintiff's involuntary reassignment in June, 2007.  Plaintiff may pursue her claims arising out of Defendant Potter's conduct between June, 2004 and June, 2006 under Title VII and the ADEA.  The accompanying Order will be entered.


**September 28, 2009**                           **_s/ Jerome B. Simandle_**
Date                                              JEROME B. SIMANDLE
                                                  U.S. District Judge